UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| KAREN PARK | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Thomas Coker | William Larr |

Attorneys Present for Cross-Defendant:
Philip Griffin

**Proceedings:** **DEFENDANT WASHINGTON MUTUAL BANK'S MOTION FOR SUMMARY JUDGMENT** (filed December 12, 2007)

**COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DENYING WASHINGTON MUTUAL BANK'S COUNTERCLAIM FOR EQUITABLE SUBROGATION RELIEF** (filed December 14, 2007)

**I.    INTRODUCTION**

On May 21, 2007, the United States filed a complaint against defendants Jean E. Finch ("Finch"), Washington Mutual Bank ("Washington Mutual"), and the State of California Franchise Tax Board ("FTB").[1]  The government alleges that Finch's failure to pay federal income taxes has given rise to federal tax liens attaching to real properties to which Finch holds title.  Compl. ¶ 4.  These real properties -- one in Culver City ("the Culver City property"), the other in Palm Desert ("the Palm Desert property") (collectively, "the Finch properties") -- are situated within the Central District of California.  Id.  Through this action, the government seeks to foreclose and sell the Finch properties.  Id. ¶ 1.  Washington Mutual was initially sued as the successor in interest to Coast Federal Bank ("Coast") because it was at that time the beneficiary of a deed of

---

[1] It appears that the Clerk has included California as a party defendant, although the complaint does not designate California as such.  As a result, the Court directs the Clerk to issue an order *nunc pro tunc* striking California as a party defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

trust, executed by Finch in favor of Coast, in the amount of $137,000.  Id. ¶ 6.  The government sued the FTB as a party defendant because it holds a recorded state tax lien on the Finch properties in the amount of $12,185.40.  Id. ¶ 7.

  Finch answered the complaint on July 27, 2007.  On August 21, 2007, Washington Mutual filed an answer.  Concurrently therewith, Washington Mutual filed a cross-claim against the State of California and counterclaim against the government.  Washington Mutual filed a first amended answer, a first amended cross-claim, and a first amended counterclaim on September 5, 2007.

  On September 6, 2007, the FTB filed an answer to the complaint.  On September 11, 2007, Washington Mutual filed a further cross-claim against the State of California and a further counterclaim against the government.[2]  The government answered Washington Mutual's counterclaim on September 13, 2007.  The FTB answered Washington Mutual's first amended cross-claim on October 14, 2007.

  On November 19, 2007, the Court granted the government's unopposed motion for order foreclosing federal tax lien and selling real property and duly ordered the foreclosure and sale of the Palm Desert property.

  On December 12, 2007, Washington Mutual filed a motion for summary judgment seeking a determination that it holds an equitable lien in the position of first priority on the Culver City property.  The government filed an opposition thereto on December 21, 2007.  Washington Mutual filed a reply on December 27, 2007.

  On December 14, 2007, the government filed a cross-motion for summary judgment seeking judgment in its favor on Washington Mutual's counterclaim for equitable subrogation.  Washington Mutual filed an opposition thereto on December 21, 2007.  The government filed its reply on December 28, 2007.  Neither Finch nor the FTB filed papers in regard to the instant motions.

  Washington Mutual's and the government's motions are presently before the

---

  [2] These pleadings appear to be substantively identical to the first amended cross-claim and the first amended counterclaim previously filed by Washington Mutual.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

Court.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. American Pacific Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## III.  FACTUAL BACKGROUND

On or about January 12, 1994, Coast made a loan to Finch in the amount of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

$137,000, secured by a deed of trust ("the Coast deed of trust") on the Culver City property in favor of Coast ("the Coast loan"). The Coast deed of trust was recorded on February 1, 1994. Declaration of William Larr ("Larr Decl."), Ex. 1 (Stipulation of Facts) ¶ 3, Ex. B 12. Washington Mutual is the successor in interest to Coast. Id. ¶ 5.

On June 25, 1997, the FTB recorded a tax lien against Finch for tax year 1994. FTB's Answer to Cross-Claim ¶ 5. On June 5, 1998, the government filed a notice of federal tax lien against Finch, securing unpaid federal income taxes, interest, and penalties for tax year 1993. Id. ¶ 4. On February 7, 2006, the FTB filed a tax lien against Finch for tax year 1993. Id. ¶ 5. The FTB filed a further lien against Finch on October 4, 2006, for tax years 1993 and 1994. Id.

On May 21, 2007, the government filed the complaint in the instant action.

On May 25, 2007, Washington Mutual obtained a credit report regarding Finch that indicated the existence of several state and federal tax liens against her. Larr Decl., Ex. 1, ¶ 7, Stipulation of Facts, Ex. D.

Finch was served with a copy of the summons and complaint in this case on June 7, 2007. Docket 7; Larr Decl., Ex. 1 ¶ 8. On June 21, 2007, Finch submitted to Washington Mutual a signed loan application ("the loan application") in order to refinance the Coast loan. Larr Decl., Ex. 1 ¶ 9. The loan application referred to certain federal and state tax liens against Finch. Declaration of Michael Grimes ¶ 5. On June 21, 2007, Washington Mutual approved and funded the loan to Finch ("the refinance loan"). Larr Decl. Ex. 1, ¶ 11. In approving the refinance loan, Washington Mutual's loan processor relied in part on a title commitment issued by LandAmerica Transnation that indicated that the Culver City property was not encumbered by federal and state tax liens. Declaration of Lindsay Sommer ("Sommer Decl.") ¶ 3, Ex. 1 (title commitment). The title commitment was effective May 17, 2007. Sommer Decl., Ex. 1.

Following the close of escrow, Washington Mutual disbursed $101,871, of which $101,778.55 was used to pay off the Coast loan and $92.45 was disbursed for additional loan costs. Larr Decl. Ex. 1, ¶ 11. As security for the refinance loan, Finch executed a deed of trust in favor of Washington Mutual ("the 2007 deed of trust"). Washington Mutual recorded the 2007 deed of trust on August 1, 2007. Id. ¶ 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

## IV.   DISCUSSION

The question posed by the government's and Washington Mutual's cross-motions for summary judgment is whether the 2007 deed of trust in favor of Washington Mutual should attach to the Culver City property in a position of first priority by operation of the doctrine of equitable subrogation.

### A.   The Doctrine of Equitable Subrogation

"Equitable subrogation permits a person who pays off an existing encumbrance to assume the same priority position as the holder of that encumbrance." Han v. United States, 944 F.2d 526, 528 (9th Cir. 1991).  The doctrine of equitable subrogation is governed by state law.  Id. at 651.  The court in Katsivalis v. Serrano Reconveyance Co., 77 Cal. App. 3d 200 (1977), described equitable subrogation as follows:

> One who advances money to pay off an encumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit.

Id. at 210 (quoting Simon Newman Co. v. Fink, 206 Cal. 143, 146 (1928)).

Additionally, the California Supreme Court has stated that a party seeking to be equitably subrogated to the rights of a secured creditor must satisfy the following five prerequisites: (1) payment must have been made by the subrogee to protect his own interest; (2) the subrogee must not have acted as a volunteer; (3) the debt paid must be one for which the subrogee was not primarily liable; (4) the entire debt must have been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

paid; (5) subrogation must not work any injustice to the rights of others. Caito v. Untied Cal. Bank, 20 Cal. 3d 694, 704 (1978).

The court in Caito further stated that "[a]s now applied the doctrine of equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." Id. (quoting Estate of Kemmerrer, 114 Cal. App. 2d 810, 814 (1974)). From this language, some courts have read Caito as permitting equitable subrogation even where all five elements are not satisfied. See Hamada v. Far E. Nat'l Bank (In re Hamada), 291 F.3d 645, 653 (9th Cir. 2002) ("the California Supreme Court has held explicitly that subrogation is not limited to circumstances where the five factors are met); Mort v. United States, 86 F.3d 890, 894 (9th Cir. 1996) ("Equitable subrogation is a broad equitable remedy, and therefore, it applies not only when [Caito's] five factors are met, but also whenever "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.'"); Han v. United States, 944 F.2d 526, 529 (9th Cir. 1991); In re Flamingo 55, Inc., 2007 Bankr. LEXIS 3653, *37-38 (Bankr. D. Nev. 2007) ("As Caito noted, given the equitable origins of subrogation, sometimes equitable concerns can override the stated elements of the judge-made doctrine."); but see 5 MILLER & STARR, CAL. REAL EST. DIGEST: SUBROGATION § 3 (3d ed. 2007); Fidelity Nat'l Title Ins. Co. v. United States, 907 F.2d 868, 870 (9th Cir. 1990) ("California applies equitable subrogation where five criteria are met."); Simon v. United States, 756 F.2d 696, 698-99 (9th Cir. 1985); Sehremelis v. Farmers & Merchs. Bank, 6 Cal. App. 4th 767, 778 (1992) (noting Caito's language suggesting the broader applicability of the doctrine, but stating that for equitable subrogation to apply, the Caito elements must be satisfied).

Furthermore, "California, along with other jurisdictions, has adopted the superior equities doctrine in all cases of equitable or conventional subrogation." State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A., 143 Cal. App. 4th 1098, 1109 (2006). Thus, equitable subrogation will not be applied where "the equities are equal or the rights not clear." Meyers v. Bank of America Nat'l Trust & Sav. Ass'n, 11 Cal. 2d 92, 101 (1938). It is the proposed subrogee's burden to show its superior equity. Am. Alliance Ins. Co. v. capital Nat'l Bank of Sacramento, 75 Cal. App. 2d 787, 793 (1946).

 **B.** **The Caito Elements**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

    Washington Mutual first argues that the aforementioned elements set forth in Caito do not apply in the instant case, where the question is whether a lender who provides refinancing is entitled to equitable subrogation. Rather, Washington Mutual urges the Court to follow Katsivalis v. Serrano Reconveyance, 70 Cal. App. 3d 200 (1977), and Smith v. State Savings & Loan Ass'n, 175 Cal. App. 3d 1092, 1099 (1985), which, according to Washington Mutual, did not consider whether the five Caito elements had been satisfied in determining whether equitable subrogation was appropriate. However, Katsivalis was decided prior to the California Supreme Court's decision in Caito. Additionally, Smith does not stand for the proposition Caito does not apply under circumstances such as those presented here. To the contrary, Smith addressed each of the Caito elements as were relevant in that case. Smith, 175 Cal. App. 3d at 1098-99. Accordingly, the Court rejects Washington Mutual's contention that the Caito elements are inapplicable here.

    The government first argues that Washington Mutual has not satisfied the first and third Caito elements. The government's argument that Washington Mutual has not satisfied the third element lacks merit. Washington Mutual, the proposed subrogee, was not primarily liable for paying off the Coast loan.³ Rather, it was Finch who was primarily liable on this loan. Washington Mutual was the lender. While it is true that Washington Mutual undertook to pay off the Coast loan when it entered into the refinance agreement with Finch, Washington Mutual did not thereby become primarily liable on the loan. Therefore, the third element is satisfied.

    With regard to the first element, which requires that the payment must have been made by the subrogee to protect its own interest, Washington Mutual argues that had it failed to pay off the Coast loan, it would have been in breach of the refinance agreement that it entered into with Finch. To protect itself against liability that would have arisen

---

³ Insofar as the government argues that the first Caito element is not satisfied because Finch paid a debt for which she was primarily liable, the government appears to be under the misimpression that Finch is the proposed subrogee for the purposes of this element. In fact, Washington Mutual is the proposed subrogee in this case, and therefore, for the purposes of the first Caito element it is immaterial whether Finch paid off a debt for which she was primarily liable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

had it breached the agreement, Washington Mutual contends it was obligated to pay off the Coast loan. Therefore, Washington Mutual argues, the first Caito element is satisfied.

      The Court is not persuaded by this argument. To begin with, Washington Mutual cites no authority for the proposition that the first Caito element is satisfied where a subrogee's payment is made in order to protect the subrogee's interest in avoiding liability for a collateral breach of contract. Were the Court to accept such an expansive notion of what constitutes an "interest" for the purposes of this element, the element would be satisfied as a matter of course whenever a proposed subrogee made a payment pursuant to a contractual obligation. While courts have liberally interpreted what constitutes an interest under Caito's first element -- see Home Ins. Co. v. Zurich Ins. Co., 96 Cal. App. 4th 17, 27-28 (2002) -- the interpretation advanced in this case by Washington Mutual would render the first Caito element a virtual nullity. See Fidelity Nat'l Title Ins. Co. v. United States, 907 F.2d 868, 870-71 (9th Cir. 1990) (purchaser at a foreclosure sale paid money solely as a volunteer purchaser of property, not to protect his own interest); accord Simon v. United States, 756 F.2d 696, 699 (9th Cir. 1985).

      Washington Mutual did not pay off the Coast loan in order to protect its security interest in the Culver City property; it paid off the loan on behalf of Finch, in exchange for Finch's renewed indebtedness to Washington Mutual under the terms of the refinance loan. Additionally, Washington Mutual has made no showing that it was compelled to enter into the refinance agreement in order to protect its existing interest in the Culver City property. For these reasons the Court finds and concludes that Washington Mutual did not pay off the Coast loan in order to protect its existing interest, and therefore, it has not satisfied the first Caito element.

      **C.    Actual Knowledge of the Tax Liens and Culpable and Inexcusable Neglect**

      Even if Washington Mutual were able to satisfy all five Caito elements, its actual knowledge of the tax liens and its culpable and inexcusable neglect in failing to protect the priority of its security interest would yet preclude equitable subrogation.

      The Ninth Circuit has stated that under California law, "equitable subrogation is denied to any party who has 'actual' knowledge of an existing encumbrance." Han v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

United States, 944 F.2d 526, 530 (9th Cir. 1991) (citing Smith v. State Savings & Loan Ass'n, 175 Cal. App. 1092, 1098 (1985)).  As Washington Mutual notes, however, the subsequent California decision of Lawyers Title Ins. Corp. v. Feldsher, 42 Cal. App. 4th 41, 51-52 (1996), set forth a more nuanced view on the signifance of a proposed subrogee's actual knowledge of senior liens.

Relying on Copp v. Millen, 11 Cal. 2d 122, 130 (1938), the court held that "some" knowledge of an intervening lien does not automatically preclude equitable subrogation, so long as the interests of the intervening lienholders are not prejudiced.[4]  Lawyers Title, 42 Cal. App. 4th at 51.  Nonetheless, where the subrogee knew that his trust deed would be junior to another party's trust deed in the absence of a subordination agreement, and where the subrogee failed to take steps to secure such an agreement from the senior lienholder, the court concluded that equitable subrogation was improper.  Id. at 51-54.  The court explained that the subrogee's "actual knowledge of the crucial facts, combined with his negligence in allowing the transaction to close despite the absence of a subordination agreement, is the type of 'culpable and inexcusable neglect' which justifies denial of equitable subrogation under the overall circumstances of this case."  Id. at 54 (quoting Simon Newman Co. v. Fink, 206 Cal. 143, 146 (1928)).

Washington Mutual first denies that it had actual knowledge of the tax liens. Relying on Lawyers Title, Washington Mutual further contends that even if it had actual knowledge of these liens, equitable subrogation is appropriate because it is not guilty of culpable and inexcusable neglect and because the government would not be prejudiced in the event it were equitably subrogated to the government lien.

According to Washington Mutual, its loan validator, Michael Grimes, approved the refinance loan on the condition that title to the Culver City property be cleared of the tax

---

[4] Lawyers Title relied on the following language in Copp: "some knowledge or means of knowledge of the existence of other person's [sic] rights in the property does not in every case preclude the court from granting the relief sought.  So that if, notwithstanding the mortgagee had some knowledge or notice, the intervening lienholder is not prejudiced by the continuance of the priority of the original mortgage and is in no different position than he would have been had the release not been recorded, equity will place the parties in their original position." Copp, 11 Cal. at 130.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

liens disclosed on the loan application. Grimes Decl. ¶ 6. Washington Mutual asserts that before closing the refinance loan, Washington Mutual's loan processor, Lindsay Sommer, obtained a title commitment issued by LandAmerica Transnation for the Culver City property. Declaration of Lindsay Sommer ¶ 3. Washington Mutual asserts that this title commitment did not indicate that there were any federal and state tax liens on the property. Id. According to Washington Mutual, in reliance on this information, Sommer approved the condition of title to the Culver City property, which made possible the closing of the refinance loan. Id. Washington Mutual notes that it is standard practice within Washington Mutual and in the mortgage lending industry to rely on title reports such as the title commitment that it relied upon in approving the refinance loan, rather than to conduct title searches. Id. Thus, Washington Mutual argues, it reasonably believed that the federal and state tax liens on the Culver City property did not exist when it issued the refinance loan to Finch. Therefore, Washington Mutual contends, even if it had actual knowledge of the tax liens, because it did not commit culpable neglect when it issued this loan, equitable subrogation is appropriate.

Additionally, Washington Mutual argues that applying equitable subrogation in this case would not frustrate the expectations of the government or the FTB because these entities knew that their respective security interests in the Culver City property were junior to the Coast deed of trust. Therefore, Washington Mutual contends, the government and the FTB would not be prejudiced if the Court allowed the 2007 deed of trust to take the place of the Coast deed of trust, in a position senior to the federal and state tax liens.

As an initial matter, the Court finds that Washington Mutual had actual knowledge of the superior tax liens on the Culver City property. It is undisputed that these tax liens appeared on documents that Washington Mutual had in its possession when it approved the refinance loan on June 21, 2007, to wit, Finch's loan application, dated the same day that Washington Mutual approved the refinance loan, and Finch's credit report, dated May 25, 2007. Larr Decl. ¶¶ 9, 11, Ex. D, E. Because Washington Mutual was indisputably in possession of documents plainly showing the existence of the tax liens, it is deemed to have had actual knowledge of these liens.[5] See San Diego Hospice v.

---

[5] To the extent that Washington Mutual argues that the information in Finch's loan application and in her credit report were not sufficiently trustworthy to have given

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

County of San Diego, 31 Cal. App. 4th 1048, 1055 (1995) (noting that actual knowledge on the part of respondent government entity could have been shown from information possessed by current employees or by records kept by the respondent).  Therefore, Washington Mutual's argument regarding its loan processor's lack of actual knowledge is unavailing.

Furthermore, the Court finds that Washington Mutual engaged in the sort of culpable and inexcusable neglect that precludes equitable subrogation.  As in Lawyers Title, despite Washington Mutual's information regarding the federal and state tax liens, Washington Mutual took no steps to protect the seniority of its security interest on the Culver City property, either by obtaining a subordination agreement or otherwise.  Additionally, because the Court concludes that Washington Mutual had actual knowledge of the federal and state tax liens, it is immaterial that, as Washington Mutual asserts, its loan processor's reliance on a title report to determine the existing liens on the Culver City property is standard practice in Washington Mutual and in the mortgage lending industry.

While it is true that were Washington Mutual equitably subrogated to that of senior lienholder, the government's lien would stand in the same junior position as it did prior to the extinguishment of the Coast loan, Washington Mutual does not allege that the government or the FTB is somehow responsible for its present predicament.  Rather, Washington Mutual acknowledges that it approved the refinance loan based on its own mistake in relying exclusively on the incomplete title report.  Under these circumstances, it cannot be said that equity requires that Washington Mutual's lien be made superior to those of the government and the FTB.  See Golden Eagle Ins. Co. v. First Nationwide Fin. Corp., 26 Cal. App. 4th 160, 171 ("the right of subrogation may be invoked against a third party only if he is guilty of some wrongful conduct which makes his equity inferior to that of plaintiff.").

---

Washington Mutual actual knowledge of the presence of any liens on the Culver City property, this argument is unavailing.  Because Washington Mutual has presented no evidence to suggest that these documents were untrustworthy, it has not rebutted the government's contention that these documents establish that Washington Mutual had actual knowledge of the federal and state tax liens.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3317 CAS (RCx) | Date | January 7, 2008 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. JEAN E. FINCH; ET AL. | | |

Accordingly, based on Washington Mutual's failure to satisfy the first <u>Caito</u> element, its actual knowledge of the federal and state tax liens on the Culver City property, its negligence in failing to affirmatively protect its senior lien interest in the property prior to issuing the refinance loan, and its failure to show that equity favors equitable subrogation, the Court concludes that Washington Mutual is not entitled to equitable subrogation. Therefore, the Court DENIES Washington Mutual's motion for summary judgment and GRANTS the government's motion for summary judgment.

**IV.    CONCLUSION**

Based on the foregoing, the Court DENIES Washington Mutual's motion for summary judgment. In addition, the Court GRANTS the government's motion for summary judgment.

IT IS SO ORDERED.

|  | : | 05 |
|---|---|---|
| Initials of Preparer | kpa | |